IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOPE VITTORINI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-3623 |
| | § | |
| UNIVERSITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

### I.    INTRODUCTION

1.    This is a civil action brought pursuant to 42 U.S.C. § 12132 and 29 U.S.C. § 794 to seek redress in the form of injunctive relief for Defendant's wrongful actions in discriminating against Plaintiff on the basis of her disability by virtue of failure to provide all reasonable accommodations requested by Plaintiff and to which she is entitled and the failure to ensure consistent implementation even of those reasonable accommodations for which it has expressly recognized her entitlement. This action also seeks attorneys' fees for time spent in representing Plaintiff in this proceeding.

### II.    JURISDICTION

2.    This Court has jurisdiction pursuant to 42 U.S.C. § 12132, 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. § 794.

3.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events that give rise to this Complaint occurred in this district.

### III.    PARTIES

4.    Plaintiff Hope Vittorini is a student at the University of Houston who resides in the geographical area in which the university is located.

5.    Defendant University of Houston is a public university and an arm of the State of Texas.  It is a recipient of federal funding.

### IV.    STATEMENT OF FACTS

6.    Plaintiff Hope Vittorini is a student at the University of Houston.  She is pursuing a degree in Psychology, along with a minor in Italian.

7.    Plaintiff has the diagnosis of dyscalculia—a learning disorder that has a substantial impact on her ability to do math and manipulate numbers.  Plaintiff's dyscalculia substantially limits her major life activities of, among other things, learning and thinking.

8.    Plaintiff's curriculum in her Psychology major calls for her to deal with mathematical concepts and exercises on a frequent basis.  As but one example, Statistics is a required part of the major.  It is unsurprising that a psychology major is required to receive instruction in statistics because, for example, descriptive statistics allow psychologists to summarize data related to a variety of factors, regression models allow psychologists to quantify various relevant variables, and hypothesis tests allow psychologists to compare the effectiveness of different methods and strategies.  Furthermore, the psychology major requires exposure to other sciences in classes in which mathematics often plays a central role.  With her dyscalculia, therefore, Plaintiff relies on reasonable accommodations so that she can pursue her educational and career aspirations on a level playing field.

9.    Despite recognizing that Plaintiff has dyscalculia, Defendant University of Houston has failed to provide her the equal playing field to which she is entitled.  As an initial

matter, Defendant has failed to provide her some of the reasonable accommodations she has requested and has further failed to ensure consistency in the implementation of even those accommodations it has formally recognized as reasonable and granted.

10.    Plaintiff's neuropsychologist has recommended the following reasonable accommodations for Plaintiff: (a) extended time on all academic assessments, (b) use of a testing center for all academic assessments, (c) a copy of notes for each class, (d) the ability to record all class lectures, (e) use of a four-function calculator for all assignments involving math calculations, except when basic math calculation is the skill assessed, (f) math instruction in multiple formats, including one-on-one instruction by the professor or a tutor with extensive experience working with students with dyscalculia, (g) the ability to ask clarifying questions during math assessments, (h) the opportunity to take math assessments in an alternate format, and (i) regular math tutoring that focuses on algebraic concepts.  In making these recommendations, Plaintiff's neuropsychologist in each instance explained the need for the requested accommodation and how it would serve to help even the playing field for Plaintiff.

11.    Defendant University of Houston granted some, but not all, of the accommodations put forward in these recommendations, essentially ignoring those specific to the dyscalculia diagnosis.  Defendant allowed the following: (a) extended time, (b) a distraction-reduced environment, (c) the ability to record lectures, (d) the ability to use a note card or reference sheet, (f) provision of guidance to the student for study purposes, (g) use of a calculator for exams with math content, (h) due date flexibility for assignments, and (i) the opportunity for Plaintiff to communicate clarifying questions.  The University of Houston did not allow math instruction in multiple formats, or the opportunity to take math assessments in an alternative format, despite the fact that these requests are both reasonable and necessary accommodations

for Plaintiff in light of her dyscalculia diagnosis.  Defendant has claimed that these accommodations would constitute fundamental alterations in the instruction and/or services provided.  They would not.  As explained by the neuropsychologist, these accommodations do no more than assist in ameliorating the impact of Plaintiff's disabilities and helping to put her in a situation as equal as possible to the situation of her peers.  Even after Plaintiff provided Defendant specific information and assessments in August 2023 demonstrating her disability in connection with mathematics and making specific recommendations to ameliorate the impact of that disability, Defendant refused to acknowledge those recommendations and simply continued to grant the same accommodations it had granted prior to receipt of the new information and assessments.  The fact that Defendant had no legitimate basis for these refusals is evidenced, among other things, by the fact that Mr. Kyle Mutz, Director of Defendant's Justin Dart, Jr. Student Accessibility Center recommended in a May 2023 that Defendant grant Plaintiff the use of visual aids in classes or assessments involving mathematics, as well as having the professors break down relevant math problems and provide multiple choice formats for assessments—just the sort of accommodations Defendant would later reject as "fundamental alterations," despite the fact that, as Mr. Mutz implicitly acknowledged, they were nothing of the kind.

12.    Even with respect to the accommodations it has formally granted, Defendant University of Houston has failed to ensure their consistent implementation to the severe detriment of Plaintiff's ability to move forward appropriately with her academic studies.  As but one example, during the 2023-2024 school year, Plaintiff took Statistical Methods in Psychology from Professor Dongjie Wu.  Although assured repeatedly by Mr. Kyle Mutz, Director of Defendant's Justin Dart, Jr. Student Accessibility Center, that she would receive her requested reasonable accommodations in this course, Plaintiff soon found that Professor Wu was so

unresponsive in connection with these accommodations that their grant was effectively hollow with respect to her course.  As noted above, Defendant had formally granted Plaintiff the accommodation of having the opportunity to ask clarifying questions.  This accommodation was particularly critical for Plaintiff in Professor Wu's Statistical Methods course, given the complex mathematical concepts interwoven throughout the coursework.  In fact, Professor Wu responded to clarifying questions from Plaintiff by merely telling her to see the general class notes. Professor Wu provided no extra support of any kind.  While some professors are admittedly more energetic and conscientious than others with respect to their responsiveness to and their implementation of accommodations, the concept of reasonable accommodation does not encompass the entire spectrum of possible variations from professor to professor.  After all, if one professor is almost completely unresponsive with respect to a reasonable accommodation critical to equalizing the playing field in that professor's course, such as the clarifying questions accommodation in Professor Wu's course, then the grant of the reasonable accommodation to which that professor is unresponsive becomes hollow at best and no longer constitutes a reasonable accommodation at all.  Professor Wu's approach fell into that category.

13.    When Plaintiff brought to the attention of university administrators these and other difficulties resulting from Professor Wu's dismissive attitude, she was given no meaningful or substantive remedy.  The university in effect shrugged off its responsibilities.  For example, the Assistant Vice President of Student Affairs—Health and Well-Being brushed off Plaintiff's concerns by indicating she should visit the Equal Opportunity Office if she had any concerns. Another administrator simply exclaimed: "This is a university, and you need to grow up." Furthermore, when options or remedies, such as tutoring, were discussed in meetings with university officials, the officials did not follow up on the options or remedies discussed. Despite

availing herself of other tutoring avenues and mechanisms for assistance, Plaintiff was unable to achieve a grade in Professor Wu's class in the absence of her reasonable accommodations that would qualify her for credit in the class. As the class is required for her major, this has significantly compromised her ability to move forward to the degree that she has had to take this course again in the 2024-2025 school year from a different educational institution—an institution which has granted her appropriate accommodations as recommended by her neuropsychologist.

14.    As another example, over the summer of 2024, Plaintiff faced a similarly dismissive response from another professor. During that time period, she took Phys 1304 Solar Systems from Dr. Andrew Renshaw. Like Professor Wu before him, Dr. Renshaw ignored Plaintiff's communications regarding her need for reasonable accommodations throughout the entire duration of his course. Unable to receive any support from him, Plaintiff missed both math questions on an exam in late July. Despite redoubling her efforts to obtain her reasonable and necessary accommodations, Plaintiff continued to receive no response from Dr. Renshaw or from the Physics department chair. Only at the very end of the course did Plaintiff finally receive a relevant communication from Dr. Renshaw who simply informed her that there would be no math on the final. By this time Plaintiff had struggled mightily to overcome the burdens irresponsibly placed on her in connection with this class—struggles which impacted not only her work in her other classes, but also her health.

15.    The above-referenced failures are only some of the examples of inconsistent implementation of Plaintiff's reasonable accommodations that have occurred over the course of Plaintiff's time at the University of Houston. Plaintiff has attempted to use the mechanisms made available to her by Defendant to have these failures corrected. She has corresponded repeatedly with Mr. Mutz, the professors at issue, department chairs, and many other

administrators and staff members about the need for rigorous implementation of her accommodations. The undersigned counsel attempted to resolve the issue with a university attorney familiar with Plaintiff's situation prior to the filing of this complaint. However, the efforts of Plaintiff and her counsel were met with characterizations of Plaintiff as overexcitable and unduly prone to anxiety over lapses in responsiveness—in effect, dismissively and deprecatingly shrugging off the vigorous attempts of a serious student to obtain the tools she needs to pursue her legitimate educational aspirations in the same way any other serious student would do. She is entitled to these tools, and the University of Houston is obligated to provide them. Because it has not done so, Plaintiff has no choice but to seek judicial intervention.

## FIRST CAUSE OF ACTION (ADA)

16.     Plaintiff incorporates by reference paragraphs 1-15 of this Complaint.

17.     The University of Houston is a public entity within the meaning of that term under Title II of the ADA.

18.     Plaintiff is a qualified individual with a disability under the ADA.

19.     The acts and omissions of the University of Houston constitute unlawful discrimination under 42 U.S.C. § 12132 and a failure to grant reasonable accommodations under that statute.

20.     The acts and omissions of the University of Houston constitute intentional discrimination in that it has continued both to refuse certain reasonable and necessary accommodations for Plaintiff, even after the reasonableness of and need for these accommodations has been explained multiple times, and to ensure the consistency in implementation of the reasonable accommodations it has approved, even where Plaintiff has suggested reasonable mechanisms to ensure such consistency in implementation.

21.    Plaintiff has suffered substantial injuries because of Defendant's intentional discrimination and is continuing to suffer irreparable harm because of Defendant's ongoing wrongdoing.

## SECOND CAUSE OF ACTION (SECTION 504)

22.    Plaintiff incorporates by reference paragraphs 1-21 of this Complaint.

23.    Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C. § 705.

24.    Plaintiff has been denied and excluded from significant benefits of Defendant's program which would have, if properly designed and implemented for Plaintiff, allowed her to avail herself of its services and programs.

25.    Defendant receives federal financial assistance in implementing its programs.

26.    Defendant's level of deliberate indifference, bad faith, and gross misjudgment in failing to provide a safe environment for Plaintiff to avail herself of its programs and services was and continues to be sufficiently egregious to constitute discrimination under Section 504.

27.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer substantial injuries.

## PRAYER

To remedy Defendant's wrongdoing as articulated above, Plaintiff respectfully requests the following:

- An order requiring Defendant to accept the recommendations of Plaintiff's neuropsychologist with respect to accommodations Plaintiff should be granted;

8

- An order requiring Defendant to accept Plaintiff's grade in her Statistics class referenced above as sufficient to receive credit for that class and to have it apply towards her major;

- An order requiring Defendant to detail precisely what Plaintiff's academic requirements will be going forward and what will be accepted in satisfaction of those requirements, to prevent any illegitimate *post facto* retaliatory efforts to obstruct Plaintiff's graduation efforts;

- An order requiring Defendant to designate an administrative contact person with whom Plaintiff can communicate concerning her accommodations and their implementation, with such contact person having sufficient authority within the university to ensure compliance with these accommodations; and

- Payment for Plaintiff's reasonable and necessary attorneys' fees and costs of the suit.

DATED: September 25, 2024              Respectfully Submitted,

                                     ____/s/ Mark Whitburn_____
                                     Mark Whitburn
                                     State Bar No. 24042144
                                     Sean Pevsner
                                     State Bar No. 24079130
                                     Whitburn & Pevsner, PLLC
                                     2000 E. Lamar Blvd., Suite 600
                                     Arlington, Texas 76006
                                     Tel: (817) 653-4547
                                     Fax: (817) 653-4477
                                     mwhitburn@whitburnpevsner.com